# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of: | ) |
| information associated with certain cellular telephones assigned call numbers 414-350-7417 and 414-899-6082, that are stored at premises controlled by Sprint, a wireless telephone service provider headquartered at 6200 Sprint Parkway in Overland Park, Kansas. | ) ) ) ) ) ) Case No. _19·MJ-1213_ |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A1. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 844(i); Title 18, United States Code, Section 844(m); Title 18, United States Code, Section 1519

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Rick Hankins of the ATF
Printed Name and Title

Sworn to before me and signed in my presence:

Date: 3/5/19

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable William E. Duffin , U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANTS

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for search warrants for the following:

   a.     Attachment A1: information associated with certain cellular telephones assigned call numbers 414-350-7417 and 414-899-6082, that are stored at premises controlled by Sprint, a wireless telephone service provider headquartered at 6200 Sprint Parkway in Overland Park, Kansas;

   b.     Attachment A2: information associated with a certain cellular telephone assigned call number 414-687-5095, that is stored at premises controlled by AT&T Mobility, a wireless telephone service provider headquartered at 11760 U.S. Highway One, Suite 600, North Palm Beach, Florida 33408.

2.     The information to be searched is described in the following paragraphs and in Attachments A1 and A2. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) to require Sprint and AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

3.     I am a Special Agent of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

4.     I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That training included

various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

5.      In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,200 class hours of fire-related training. To date, I have participated in over 255 fire scene examinations and have testified as an expert.

6.      Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, Milwaukee Area Technical College, and Blackhawk Technical College. I have also participated in over 185 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

7.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal offenses. As a part of my duties with the ATF, I

2

investigate criminal violations relating to arson and arson-related offenses, including violations of Title 18, United States Code, Section 844. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and information provided to me by other federal, state, and local law enforcement officers. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.      Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachments A1 and A2 contains evidence of violations of arson of commercial property, in violation of Title 18, United States Code, Section 844(i), conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(m), and destruction, alteration, or falsification of records in federal investigations, in violation of Title 18, United States Code, Section 1519, as described in Attachment B.

## PROBABLE CAUSE

10.      In conjunction with other federal, state, and local law enforcement officers, I am conducting an investigation into an arson affecting interstate commerce and a conspiracy to commit arson that occurred on January 2, 2019 in the vicinity 716 West Rogers Street in Milwaukee, Wisconsin, in violation of Title 18, United States Code, Sections 844(i) and 844(m).

11.      I have obtained records and information, including toll records and historical cell site information, from on or about December 31, 2018 to on or about January 8, 2019 for call numbers 414-350-7417, 414-687-5095, and 414-899-6082, pursuant to state search warrants obtained during the

3

related homicide investigation. Those records, however, did not include historical precision location information, also known as estimated location records or historical handset location data. Each provider refers to its proprietary estimates of a cellular device's location differently; this information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

12.    In this application, I seek records and information associated with those same call numbers for (i) a broader time period—October 1, 2018 to February 5, 2019—and (ii) including historical cell site information and historical precision location information, because the pattern of communications and relative locations of the targets—brothers MATTHEW NEUMANN and DONALD NEUMANN—in the weeks before and after the arson on January 2, 2019 are material to the investigation. As described below, that information is material to determining the existence, nature, and scope of the conspiracy and the involvement of MATTHEW NEUMANN and DONALD NEUMANN in the crimes under investigation.

13.    Those records confirm that MATTHEW NEUMANN is the subscriber to the Sprint phone number assigned 414-350-7417, that DONALD NEUMANN is the subscriber to the Sprint phone number assigned call number 414-899-6082, and that a prepaid customer named "JOSE OZZY" registered the account on January 4, 2019 for the AT&T phone number assigned call number 414-687-5095. When, however, MATTHEW NEUMANN was taken into custody on January 8, 2019, police officers found him in possession of an Alcatel 5041C cell phone with the assigned call number 414-687-5095. The SIM card in that cell phone indicated that AT&T provided service to that phone.

14.    On January 2, 2019 at approximately 9:55 p.m., the Milwaukee Fire Department and the Milwaukee Police Department responded to a vehicle fire in the vicinity of 716 West Rogers Street in Milwaukee, Wisconsin. The vehicle was identified as a 2001 Ford F-250 pickup truck bearing Wisconsin

4

license plate MA-9985 and Vehicle Identification Number 1FTNW21L21EC43063. Police officers were informed that the fire was suspicious.

15.     A registration check with the Wisconsin Department of Motor Vehicles revealed that the Ford F-250 pickup truck bearing Wisconsin license plate MA-9985 is registered to Matthew Neumann (DOB: XX/XX/1975), who lives at 9426 South 29th Street in Franklin, Wisconsin.

16.     At about 11:00 p.m. on January 2, 2019, police officers of the Franklin Police Department contacted Matthew Neumann at his residence. One officer noticed a strong odor of a chemical accelerant, once let inside by Matthew Neumann, and observed clothing lying nearby. Matthew Neumann told the police officers that he owns eight trucks, because he owns a plowing business and that he lets one of his employees drive the Ford F-250 home.

17.     Police officers later interviewed Matthew Neumann's family. Tammy Neumann, Matthew Neumann's wife, stated that at approximately 5:00 a.m. on January 2, 2019 she was awoken by Matthew Neumann at their residence at 9426 South 29th Street in Franklin, Wisconsin. She observed that Matthew Neumann was intoxicated and began undressing, and she also noticed that Matthew Neumann had a black handgun and heard him rack the slide.

18.     When she left the house later that morning, Tammy Neumann observed Matthew Neumann's 2001 Ford F-250 pickup truck bearing Wisconsin license plate MA-9985 parked on the driveway and observed a white male, approximately 35 to 40 years old, slumped down in the passenger seat. Tammy Neumann looked through the window and observed no signs of life. She thought that the male had blood around his nose and mouth and that the passenger window may have been spidered, as if struck by a human head.

19.     According to Tammy Neumann, Matthew Neumann did not return to the residence until about 10:00 p.m. that night. When he did, Tammy Neumann smelled a strong odor of diesel fuel on Matthew Neumann's clothes, such that she told Matthew Neumann to put the clothes outside.

5

20.     Matthew Neumann's daughter overheard a conversation between Tammy Neumann and Matthew Neumann, where Matthew Neumann said that he shot "Rich" or "Dick" "over a pack of squares." Tammy Neumann and her daughter left the residence and later returned. At that point, the truck was gone along with Matthew Neumann.

21.     On January 8 and 11, 2019, I conducted a fire scene examination of the Ford F-250 along with the Milwaukee Police Department and Wisconsin Department of Justice's Division of Criminal Investigation pursuant to a state search warrant.   One officer discovered a bullet hole and strike on the B-pillar of the passenger side of the pickup truck, a lead bullet fragment at the base of the B-pillar in the midst of fire debris, and other lead bullet fragments on the B-pillar. Using a trajectory rod, another officer determined that the bullet traveled from the driver seat area to the B-pillar of the passenger seat. Officers also located a bullet and casings inside of a black melted mass on the driver's side floorboard. I located blood along the weather stripping on the passenger floorboard, removed the passenger seat, and observed additional blood on the flooring and carpeting.  I also recovered fire debris from the backseat area that emitted an odor consistent with that of a petroleum distillate.

22.     The ATF Forensic Laboratory later analyzed fire debris samples recovered from the truck bed and the backseat area of the Ford F-250.  The laboratory results showed the presence of gasoline in the truck bed and back seat area of the Ford F-250.

23.     I also obtained surveillance video that captured Matthew Neumann drive the Ford F-250 into the Citgo gas station located at 610 West Becher Street at 9:44 p.m. on January 2, 2019, followed by an early 2000s maroon Chevrolet Impala. Matthew Neumann purchased cigarettes and a lighter at the Citgo gas station. The Ford F-250 and Chevrolet Impala subsequently disappeared east out of the video frame.

24.     At approximately 9:47 p.m., a second surveillance video captured the Ford F-250 turn westbound on Rogers Street from South 6th Street, followed by the Chevrolet Impala.  The Ford F-250

6

parked westbound on Rogers Street immediately east of 1978 South 8th Street. The driver's door of the Ford F-250 subsequently opened, Matthew Neumann exited, and a clear illumination appears inside of the Ford F-250 at 9:48 p.m. as the Chevrolet Impala passed. The Chevrolet Impala traveled westbound on Rogers Street and turned southbound on 8th Street, stopping south of the intersection. There was a sudden and intense sustained flash of light inside the Ford F-250 as Matthew Neumann walked and then ran to the parked Chevrolet Impala and entered the passenger side of the Impala. The Impala then drove away. The Impala was captured on surveillance video traveling south on 8th Street away from the burning truck and then west on Becher Street.

     25.      After examining the Ford F-250, reviewing the surveillance videos, and obtaining laboratory results, I determined that the fire was the result of the human introduction of a heat source to available combustible material inside the passenger compartment of the Ford F-250, including the presence of an ignitable liquid. Based on my knowledge, training, and experience, I conclude this fire was incendiary.

     26.      Officers also recovered the clothing that Matthew Neumann had been wearing when he returned home on January 2, 2019. That clothing contained the odor of diesel fuel, blood in several areas, and a burn area. That clothing also matched the clothing Matthew Neumann was seen wearing on the Citgo gas station surveillance video minutes prior to the Ford F-250 fire.

     27.      During an interview with officers on January 10, 2019, Matthew Neumann admitted to starting the fire of the Ford F-250, claiming that he did so accidentally. He claimed that, after the vehicle fire, another vehicle in the area picked him up and that he paid the driver $30 to $40 to take him to a tavern close to his home. Matthew Neumann claimed that the driver of the vehicle was a white male and that the vehicle was burgundy or maroon in color and from the late 1990s or early 2000s—this description is consistent with that of Donald Neumann and Donald Neumann's 2003 Chevrolet Impala.

28.     Officers later executed a search warrant on hunting land leased by Matthew Neumann in the Mukwonago area and located a black-and-white Spot Free Cleaning trailer. Next to the trailer was a burn pit containing the heavily charred remains of two individuals, along with other items such as charcoal and charcoal bags.

29.     Officers of the Franklin Police Department recovered surveillance video from the Home Depot in Mukwonago, approximately five miles from Matthew Neumann's hunting property, which depicts Matthew Neumann alone on January 3, 2019 at 10:58 a.m. purchasing four bags of charcoal, lighter fluid, and eight pieces of lumber.

30.     According to publicly available court records, the State of Wisconsin charged Matthew Neumann with First-Degree Reckless Homicide, in violation of Wisconsin Statute 940.02, and Mutilating or Hiding a Corpse, in violation of Wisconsin Statute 940.11(2), in Milwaukee County Case No. 2019CF000204.

31.     Based on subscriber information, telephone toll records, and historical cell site information obtained pursuant to state search warrants, I know that Matthew Neumann's primary phone is an Apple iPhone assigned call number 414-350-7417 with service provided by Sprint. When Matthew Neumann was arrested, however, he was in possession of an Alcatel 5041C cell phone with an assigned call number 414-687-5095 with service provided by AT&T. This appears to have been what is commonly referred to as a "burner phone," in that this is a prepaid cellphone with service starting on or about January 4, 2019.

32.     A CLEAR search indicates that Donald Neumann is associated with the call number 414-899-6082. Detective Jason Ireland of the Franklin Police Department also identified 414-899-6082, as the contact number used to communicate with Donald Neumann. Detective Ireland has communicated with Donald Neumann multiple times during this investigation on that call number, and I have too. This

8

is corroborated by the subscriber information, telephone toll records, and historical cell site information provided by Sprint for Donald Neumann's phone number.

33.    The cell site and telephone toll records show that Matthew Neumann and Donald Neumann exchanged approximately 17 phone communications between 8:02 p.m. and 9:38 p.m. on January 2, 2019. Notably, Matthew Neumann had no other contact with any other number during that time period.

34.    An Intelligence Analyst from the Milwaukee County District Attorney's Office reviewed cell site and telephone toll records for Donald Neumann's phone number 414-899-6082. Cell site maps prepared by the Milwaukee County District Attorney's Office indicate that Donald Neumann's cellphone was in the vicinity of 716 West Rogers Street at about the time of the arson on January 2, 2019, because his cellphone used multiple cell towers and sectors in and around that location. These pings on the cell site maps are also consistent with Matthew Neumann's cell site and telephone toll records, which indicate multiple calls on or about those times.

35.    I know that Donald Neumann has a registered address in the Eastern District of Wisconsin. I have reviewed records from the Wisconsin Department of Transportation, which show that he registered a red 2003 Chevrolet Impala on November 30, 2018 and listed a mailing address of W141N513 Ridgeway Lane in Menomonee Falls, Wisconsin 53051. A CLEAR search also indicates that Donald Neumann registered a red 2003 Chevrolet Impala bearing Wisconsin license plate AEE-6205 on or about November 30, 2018 with a registered mailing address of W141N513 Ridgeway Lane, Menomonee Falls, Wisconsin 53051.

36.    On or about January 21, 2019, the Milwaukee Police Department executed a search warrant on Donald Neumann's maroon 2003 Chevrolet Impala. The officers found that the interior of the vehicle had recently been deep cleaned. I compared the photos of Donald Neumann's seized Chevrolet Impala to the surveillance video on the night of the truck fire. There were no dissimilarities in

9

the appearances of the two vehicles. In fact, the color, wheel rims, and trunk spoiler appeared consistent with one another.

37. On February 1, 2019, this Court issued a search warrant authorizing the search of Donald Neumann's person for the seizure of the cellular device assigned phone number 414-899-6082. On February 4, 2019, I observed Donald Neumann using the cellular device assigned phone number 414-899-6082 in front of his residence, located at W141N513 Ridgeway Lane in Menomonee Falls, Wisconsin 53051. I seized his cellphone—an Apple iPhone.

38. On February 11, 2019, this Court issued a warrant authorizing the forensic examination of Donald Neumann's Apple iPhone. Pursuant to that search warrant, Special Agent Undre Ludington of the ATF extracted information from the cellphone.

39. The forensic extraction report indicates that the Apple ID associated with that phone is rock2don@yahoo.com, that an iCloud account is present, and that the MSISDN associated with that phone is 4148996082. The report also indicates that the cellular device was used to send a text message on February 1, 2019 referring to Donald Neumann's 2003 Chevrolet Impala, stating in substance: "You know my brother has not sat in that car for 10 days Since I picked him up our car has been anywhere and everywhere. Sent this to lawyer too." Officers of the Milwaukee Police Department and Franklin Police Department seized Donald Neumann's 2003 Chevrolet Impala on January 13, 2019— approximately 10 days after the arson on January 2, 2019.

40. A comparison of the forensic extraction report for Donald Neumann's Apple iPhone and the cell site and toll records for Donald Neumann's call number 414-899-6082, the call number assigned to that same cellphone, indicates that relevant electronic evidence immediately prior to the arson was deleted from the cellphone.

41. The forensic extraction report indicates that 76 locations, 24 notes, 87 searched items, and 121 web history items were deleted. The phone's log entries indicate data usage on December 29,

2019, January 2, 2019, January 4, 2019, January 5, 2019, January 7, 2019, January 8, 2019, and January 10, 2019. However, the Chrome search history only dates back to January 3, 2019, the day after the arson. No Chrome search history prior to that date is contained in the forensic extraction report, even though the report indicates numerous Chrome searches after that date until the seizure of the cell phone. Donald Neumann's cell phone also contains records of Safari searches, but only prior to November 19, 2017. There is no search history from November 19, 2017 to January 3, 2019—more than a one-year gap. This suggests that the Chrome search history prior to the arson was deleted.

42.    The same is true of call and text message history. The call history contains records of incoming and outgoing phone calls after January 29, 2019. In fact, the forensic extraction report indicates that Donald Neumann made or received 189 calls between January 29, 2019 and February 4, 2019—the date I seized the phone. There are no records of phone calls made using the call number 414-899-6082 prior to January 29, 2019 contained in the forensic extraction report. There are, however, sporadic calls made or received using Facebook Messenger prior to that date.

43.    Likewise, the MMS message history only includes messages from January 15, 2019 to January 30, 2019; there are no MMS messages prior to this date. The SMS message history includes messages from January 15, 2019 to February 4, 2019; there are no SMS messages prior to this date.

44.    The username rock2don@yahoo.com was first used as a User Account on the cellphone on November 28, 2014, according to the forensic extraction report. The forensic extraction report also indicates that a contact numbers for a "Spoty," a "Tammy Cell", a "Spot," a "Saukville Sue," a "Sherwin Brookfield," a "Sherwin 124th St.," a "Sherwin West Alis," a "Sherwin Grafton," a "Sherwin Pewaukee," and a "Matt & Tammy" contain a timestamp of April 11, 2013. I know that Donald Neumann is a painter by profession. The contact photo for "Matt & Tammy" contains a photograph of Matthew Neumann, and that contact was created on April 11, 2013.

11

45.     As a result of witness interviews, business records, and search warrant executions, I also know that Matthew Neumann's Ford F-250 was a business vehicle in the name of Spot Free Cleaning and that the Ford F-250 was regularly used in or affecting interstate commerce.

46.     Matthew Neumann's address—9426 South 29th Street in Franklin, Wisconsin—and cell phone number 414-350-7417 are also the listed contact information for Spot Free Cleaning Solutions on the publicly available listing on Angie's List (https://www.angieslist.com/companylist/us/wi/franklin/spot-free-cleaning-solutions-reviews-6459566.htm) (last viewed on January 31, 2019). The description of Spot Free Cleaning on Angie's List is as follows:

> Commercial Cleaning Every masterpiece begins with a crystal clear canvas and the same goes for your business. Whatever your trade, the appearance and cleanliness of your facility are of the utmost importance to customers, employees and the general public. Get your competitive edge at an affordable price with Spot Free Cleaning! When it comes to professionalism and success, it's all about first impressions. With state-of-the-art equipment and over 17 years of commercial cleaning experience, Spot Free guarantees that a first impression will be the last thing on your mind. Sign up for our daily, weekly or monthly cleaning programs to keep your cleaning woes out of sight-out of mind. We offer 24 hour service, 365 days a year! We offer a full range of services including floor care, carpet cleaning, window cleaning, pressure washing and snow plowing. The Spot Free Cleaning difference is simple-we go the extra mile. From the shine of your showroom to a pristine parking lot, you can count on us to get the job done.

47.     Matthew Neumann's cell phone number 414-350-7417 is also the listed contact information for Spot Free Cleaning on the publicly available listing on Yelp (https://www.yelp.com/biz/spot-free-cleaning-franklin-2) (last viewed on January 31, 2019).

48.     During my fire scene examination, I observed a plow mount on the front end of the Ford F-250, along with a power and control tether for a plow that ran into the passenger compartment of the truck.

49.     On January 8, 2019, the Franklin Police Department executed a search warrant at the business address for Spot Free Cleaning. The officers found two work trucks, both with plows attached

12

to their front ends. The photos from that search warrant also show a third plow unattached to a vehicle on the ground. There were no other vehicles at the business location equipped with a plow mount. I believe that the unattached plow found during this search warrant execution had likely been used with the Ford F-250 pickup truck bearing Wisconsin license plate MA-9985.

50.     During that search, police officers also recovered business records from Spot Free Cleaning. Those records indicate that Spot Free Cleaning had performed salting and plowing services from at least November 15, 2018 through January 2, 2019. Those records also include contract(s) and addenda between Spot Free Cleaning and Reliable Property Services for a winter snow removal service for the 2018-2019 season. Those documents appear to be signed by Matthew Neumann.

51.     On January 29, 2019, police officers from the Franklin Police Department spoke with Tammy Neumann and Matthew Neumann, Jr., who indicated that the Ford F-250 pickup truck was used for business purposes by Spot Free Cleaning, that all employees were allowed to drive and use the Ford F-250 pickup truck for business purposes, and that the Ford F-250 pickup truck was used for snow plowing. Matthew Neumann, Jr. indicated that the Ford F-250 had been used during the winter of 2017-2018, but had not been used during the winter of 2018-2019 because there had not been enough snow.

52.     A transaction record from Summit Credit Union shows a business loan in the name of Spot Free Cleaning was issued for a 2001 Ford on or about December 31, 2016, that regular payments have been made since, and that, as of July 20, 2018, a nearly $4,000 balance remained.

53.     Insurance documents provided by 1st Auto & Casualty Insurance Company indicates that Matthew Neumann's 2001 Ford F-250 bearing the same Vehicle Identification Number was insured as a business vehicle for Spot Free Cleaning with a policy period of February 18, 2018 to February 18, 2019.

54.     I am requesting a broader time period—October 1, 2018 to February 5, 2019—then previously requested in the state search warrants, along with historical precision location information,

for the phone numbers associated with DONALD NEUMANN and MATTHEW NEUMANN. I am requesting records and information *from* October 1, 2018 to establish a baseline for frequency analyses of their communications with one another and their locations, as suggested by the historical cell site information and historical precision location information. I am requesting records and information *through* February 5, 2019—the day after I seized DONALD NEUMANN's cellular device.

55.     A frequency analysis of the telephone communications between DONALD NEUMANN and MATTHEW NEUMANN is material, in that it can establish whether the approximately 17 phone communications between DONALD NEUMANN and MATTHEW NEUMANN from 8:02 p.m. to 9:38 p.m. on January 2, 2019 is a deviation from their normal patterns of communication. Of note, of course, is that MATTHEW NEUMANN had no contact with any other number during that time period. These communications certainly appear to be a deviation from their normal patterns of communication, even within these limited records.

56.     A frequency analysis of the historical cell site location information and historical precision location information associated with DONALD NEUMANN's and MATTHEW NEUMANN's cell phone numbers can also establish a pattern of habits, travel, and locations. As noted above, case agents know of many places associated with DONALD NEUMANN and MATTHEW NEUMANN, including their respective residences. The frequency analysis of the locations associated with their cellular devices can establish whether the cell towers hits in the vicinity of and around the time of the arson are a deviation from their normal patterns.

57.     A broader time period is necessary to establish a sufficient baseline for those frequency analyses (without distortions from the holidays and travel in November and December). In short, the requested information is material to establish whether DONALD NEUMANN and MATTHEW NEUMANN acted-in-concert, by establishing the nature and extent of their relationship, the existence

and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

58.     I know that Sprint is the wireless telephone service provider for call numbers 414-350-7417 and 414-899-6082 and that AT&T is the wireless telephone service provider for call number 414-687-5095 based upon the cell site records previously obtained.

59.     In my training and experience, I have learned that Sprint and AT&T are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone, but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

60.     Based on my training and experience, I know that Sprint and AT&T can collect cell-site data about the cellular telephones using their networks. I also know that wireless providers such as Sprint and AT&T typically collect and retain cell-site and other cellular network data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. From this data, wireless providers such as Sprint and AT&T also estimate the historical locations of cellular telephones using their networks. These estimates

15

are drawn from data collected in the normal course of business, including cell-site and other cellular network data.

61.     Based on my training and experience, I know that wireless providers such as Sprint and AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the methods of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Sprint and AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

62.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the cellular telephones assigned call numbers 414-350-7417, 414-687-5095, and 414-899-6082 and may assist in the identification of co-conspirators. In light of DONALD NEUMANN and MATTHEW NEUMANN's familial relationship, these records can establish the extent and nature of their relationship, the frequency of their telephone communications, the locations that they frequent alone and together, and alternative explanations for their presence in the vicinity of 716 West Rogers Street in Milwaukee, Wisconsin on January 2, 2019. In short, the information requested is likely to contain evidence of the identity, ownership, and custody of MATTHEW NEUMANN and DONALD NEUMANN's cellular telephones and evidence of the locations of those cellular telephones before, during, and after the crimes under investigation.

## AUTHORIZATION REQUEST

63.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

64.     I further request that the Court direct Sprint and AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Sprint and AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **ATTACHMENT A1 – SPRINT**

### **Property to Be Searched**

This warrant applies to the following:

a.     Records and information associated with certain cellular telephones assigned call numbers 414-350-7417 and 414-899-6082 ("Account(s)"), that are stored at premises controlled by Sprint, a wireless telephone service provider headquartered at 6200 Sprint Parkway in Overland Park, Kansas.

## ATTACHMENT A2 - AT&T

### Property to Be Searched

This warrant applies to the following:

a.     Records and information associated with a certain cellular telephone assigned call number 414-687-5095 ("Account"), that is stored at premises controlled by AT&T Mobility, a wireless telephone service provider headquartered at 11760 U.S. Highway One, Suite 600, North Palm Beach, Florida 33408.

# ATTACHMENT B

## Particular Things to be Seized

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A1 or Attachment A2 is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account(s) listed in Attachment A1 or Attachment A2 for the time period **October 1, 2018 through February 5, 2019**:

a.      The following information about the customers or subscribers of the Account(s):

    i.      Names (including subscriber names, user names, and screen names);

    ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.      Dates of birth;

    iv.      Alternate phone numbers;

    v.      Other phone numbers on the same Account(s);

    vi.      Local and long distance telephone connection records;

    vii.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    viii.      Length of service (including start date) and types of service utilized;

    ix.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity

20

Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    x.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    xi.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account(s), including:

    i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

    ii.    information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including the locations of any cell tower and antenna face; and

    iii.    historical location records (including historical locational precision information, historical handset location data, estimated location records, geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information).

    c.    A list of definitions or keys identifying all information contained in the records.

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations arson of commercial property, in violation of Title 18, United States Code, Section 844(i), conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(m), and destruction, alteration, or falsification of records in federal investigations, in violation of Title 18, United States Code, Section 1519, during the period **October 1, 2018 through February 5, 2019**.